## MIDDLE DISTRICT, HARRISBURG.

## Taggart *versus* Fox.

1. The Act of 21st April, 1852, relative to Berks and Tioga counties, similar to the rules of court in Philadelphia and Allegheny counties, requiring specific affidavits of defence in certain cases, is constitutional.

2. Where a plaintiff would be entitled to judgment for want of a specific affidavit of defence, a rule to choose arbitrators and a rule of reference thereupon entered by defendant, will not defeat plaintiff's right: but the rules to arbitrate will be stricken off on motion.

3. Neither a suit in equity commenced by bill, nor a case where a judgment by default has been opened on terms; an action on a bail-bond, nor a cause which has been brought to an issue in law by demurrer, can be arbitrated.

ERROR to the Court of Common Pleas of *Berks county.*

This was an action of assumpsit on a promissory note, brought by Fox against Taggart. The plaintiff filed a copy of the note. Before the time appointed by the rules of the Court for hearing motions for judgment, defendant entered a rule to choose arbitrators, and afterwards in due time, a rule of reference. The court set aside the rules, and entered judgment in favor of the plaintiff, for want of a sufficient affidavit of defence. This was assigned for error.

*Hoffman,* for plaintiff in error.

*Smith,* for defendant in error.

The opinion of the court was delivered, July 24, 1854, by

BLACK, J.—This being a suit on a promissory note, comes within the Act of 21st April, 1852, which requires that a full and particular affidavit of defence shall be put in, or judgment may be taken by the plaintiff. The law is unfortunately confined

[Taggart v. Fox.]

to Berks and Tioga counties. No such affidavit was filed, and judgment was taken for want of it.

The constitutional right of the legislature to pass such a law as that of 1852, is again denied. What provision is there in the constitution forbidding the supreme authority of the State to make a regulation for the suppression of that most mischievous, most demoralizing and most loathsome of all practices—the making of false defences to honest claims in courts of justice? None. Then, in nothing does this law violate the constitution. We have said so already in *Hoffman* v. *Locke*, 7 Harr. The gentleman who was the party in that case, is counsel here, and has brought the subject up again that we may have an opportunity of revising a decision which the profession generally considers erroneous. The lawyers of Pennsylvania have among them as large a proportion of honest and upright men as any other class in the country. Their love of justice, and regard for truth, to say nothing of learning and talents, is a sufficient reason for confiding in the ultimate correctness of their judgment. If it were otherwise, we could not afford to be wrong for the sake of their approbation. We do not believe, however, that they deserve this left-handed compliment to their integrity. Like the great mass of the people, they desire to wipe away from the law the reproach of permitting defences to be made which they who make them know to be false, or do not believe to be true. Nobody has yet invented a better mode of testing a party's belief than his oath. It is not always effectual; but, wherever it has been adopted, it has done much to purify the stream of justice, and to remove obstructions from it. Such is the result of the reconsideration we have given to the constitutional question in *Hoffman* v. *Locke*.

In this, as in the former case, the defendant below entered a rule of reference, and thought he had, by that means, taken it beyond the power of the court and the affidavit law both. He was mistaken. The statute authorizing compulsory arbitrations, and that which requires affidavits of defence, cannot be so used as to repeal each other. They must be construed in such manner that they will stand together. But if a defendant could be permitted to arbitrate the case before the plaintiff had time to move for judgment, the obligation to make an affidavit could be evaded by a trick, of which the cheapness and ease would make it so attractive, that the virtue of some persons would not be able to resist the temptation. You cannot try your defence either by arbitration, or by jury, unless you have one; and, under the Act of 1852, you are conclusively presumed not to have any until you swear to it, and put your oath on record. It then becomes a question of law, whether the defence sworn to is sufficient, if made out, and nobody will assert that a mere legal issue can be referred. But, after the court decides it to be good in law, you may refer

[Taggart *v.* Fox.]

it to arbitrators, to see whether you can make it out to be true in fact.

The words of the legislature, giving the right to arbitrate, are very broad and general in their terms. The Act of 1836, sec. 8, gives the power to "either party in any civil suit or action." Yet a suit in equity, commenced by bill, cannot be arbitrated— nor a case where a judgment by default has been opened on terms —nor an action on a bail bond—nor a cause which has been brought to an issue in law by a demurrer. The general words of the arbitration law cover all these cases; they are not excepted by the statute itself; but because they are not within its spirit, they are adjudged to be beyond its operation. Such a case as that now before us is further away from its true intent than any of them. The defendant, by not making an affidavit, admitted that he had no defence. There was but one duty left for any tribunal to perform, and that was to give the judgment against him, which the plaintiff had a right by law to demand.

To avoid the justice which he was sure to receive in court, he carried this case without a defence—this claim without a possible answer—before arbitrators, for them to try a question which had but one side, and to investigate the truth of an allegation which he did not deny. *Ex nihil, nihil fit.*

When a defendant arbitrates a case under such circumstances, it is irregular, and the proceedings under the rule of reference ought to be set aside. If the plaintiff had appeared, and taken part in choosing the arbitrators, or if he had gone before the arbitrators themselves, he would have waived his right to judgment for want of an affidavit. But he did not do either of these things.

This case differs from *Hoffman* v. *Locke* only in one particular. Here the defendant succeeded in getting on with his proceedings so far as to have the arbitrators actually chosen before the plaintiff had an opportunity of calling upon the court to arrest him. In the other case he was stopped immediately after the rule to refer had been entered. We used some words in that opinion from which it was inferred that the court could contest the case until the appointment of the arbitrators, but not afterwards. We did not then lay down any rule for this case, because it was not before us. We did not say whether the appointment of arbitrators would determine the power of the court or not. If we had, we concur in the candid opinion of the counsel for the plaintiff in error, that we would have been making a distinction without a difference. The court can set aside proceedings under the arbitration law at any stage, if the rule of reference has been irregularly and improperly entered by one party without the consent, express or implied, of the other.

Judgment affirmed.